1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

CHIKE KANAYO OMO,

No. C 11-04975 CRB

12

     Plaintiff,

**ORDER GRANTING MOTION TO DISMISS**

13

  v.

14

ROBIN BARRETT,

15

     Defendant.

16

                             /

17      Plaintiff Chike Omo, a lawful permanent resident of the United States and native of

18 Nigeria, asks the Court to (1) judicially review the denial of his Application for

19 Naturalization, and (2) enjoin his removal proceedings.  <u>See generally</u> Petition (dkt. 11).

20 Defendants, Robin Barrett, Alejandro Mayorkas, Janet Napolitano, and Eric Holder, Jr.,

21 move to dismiss Plaintiff's first request under Federal Rule of Civil Procedure 12(b)(6) and

22 his second request under Federal Rule of Civil Procedure 12(b)(1).  <u>See generally</u> Mot. (dkt.

23 21).  As discussed below, the Court grants the Motion on both grounds.

24 **I.    BACKGROUND**

25      Plaintiff, a naive of Nigeria, entered the United States in 1992 as a B1/B2 tourist.

26 Petition ¶ 9.  He married Thesia Nichelle Davis, an American citizen, in February 1997. <u>Id.</u> ¶

27 11.  Shortly thereafter, Plaintiff and Ms. Davis filed a Form I-130, Petition for Alien

28 Relative, and a Form I-485, Application to Register Permanent Resident Status. <u>Id.</u> ¶ 12.  In

**United States District Court**
For the Northern District of California

1   January 1999, United States Citizenship and Immigration Services ("USCIS") approved the

2   I-130 petition and the I-485 application, and granted Plaintiff conditional resident status.

3   Id. ¶ 14.  At this point, Plaintiff and Ms. Davis were living in San Pablo California, but

4   Plaintiff was traveling to Los Angeles frequently for work, and Ms. Davis was increasingly

5   working at a group home for boys; the "nomadic" living took a toll on their relationship.

6   Id. ¶ 15.  Nonetheless, in April 2001, Plaintiff and Ms. Davis filed a Form I-751, Petition to

7   Remove the Conditions on Residence, submitting documents supporting the existence of

8   their marriage.  Id. ¶ 16.  USCIS approved that form in November 2003, granting Plaintiff

9   lawful permanent resident status.  Id. ¶ 18.

10   In August 2006, Plaintiff filed his first Form N-400, Application for Naturalization,

11   seeking naturalization based on his marriage to Ms. Davis.  Id. ¶ 20.  As of March 2007,

12   Plaintiff and Ms. Davis were in relationships with other people, but they remained married.

13   Id. ¶ 22.  Plaintiff failed to appear for examinations in January 2007 and December 2010.

14   Id. ¶¶ 23, 24, 38, 51.  The USCIS administratively closed the first application.  Mot. at 4.

15   In the meantime, in February 2008, Plaintiff, engaged to someone else, filed for

16   divorce.  Id. ¶ 27.  In August 2008, Plaintiff and Ms. Davis were divorced.  Id. ¶ 29.

17   In March 2010, Plaintiff filed a second Form N-400, seeking naturalization based on

18   having been a lawful permanent resident for five years.  Id. ¶ 44.  In August 2010, Plaintiff

19   appeared before USCIS for an examination.  Id. ¶ 47.  At the examination, he passed tests on

20   English, U.S. history, and government.  Id.  However, he failed to appear for a subsequent

21   interview on December 9, 2010, assuming incorrectly that the interview related to his first

22   naturalization application.  Id. ¶¶ 48, 51.  On December 10, 2010, USCIS denied Plaintiff's

23   second application for failure to prosecute.  Id. ¶ 51.

24   Plaintiff administratively appealed the denial of his second application by filing a

25   Form N-336, Request for Hearing on a Decision.  Id. ¶ 53.  On March 1, 2011, Plaintiff

26   appeared before USCIS and provided sworn testimony in support of his second application.

27   Id. ¶ 54.  Plaintiff admitted that he did not reside at the addresses listed on the Form I-130

28   that Ms. Davis filed on his behalf, but testified that he physically resided with Ms. Davis

**United States District Court**
For the Northern District of California

until the Spring of 2005.  Mot. at 4.  He testified that both he and Ms. Davis filed the Form I-751 to remove conditions on his resident status, and that he had seen Ms. Davis sign the petition.  Id.  He was unable to provide any documents to substantiate his marriage to Ms. Davis, claiming that he only had a copy of their marriage certificate and a birth certificate. Id. at 4-5.  USCIS informed Plaintiff that it had a sworn affidavit from Ms. Davis suggesting that she only married Plaintiff to allow him to stay in the United States.  Petition ¶ 54. USCIS further informed Plaintiff that Ms. Davis denied having signed the Form I-751 and their 1999 and 2000 taxes.  Id.  Plaintiff posited that if Ms. Davis said such things, it was because "she was upset that he moved on."  Id.

In June 2011, USCIS denied Plaintiff's application for naturalization on the ground that he was not lawfully admitted to the United States.  Mot. at 5.  USCIS found that Plaintiff obtained his lawful permanent resident status by entering into a sham marriage to a U.S. citizen, and that therefore his status was invalid.  Id.  USCIS informed Plaintiff that he could request a review with a United States District Court within 120 days.  Petition ¶ 57.

In August 2011, while Plaintiff's time to seek relief for the denial of his naturalization application was still pending, and based on the finding of marriage fraud by USCIS, the Department of Homeland Security ("DHS") placed Plaintiff in removal proceedings by issuing a Notice to Appear.  Id. ¶ 61.  A master calendar hearing in Plaintiff's case is set for April 26, 2012, at which point Plaintiff will be able to apply for every available relief from removal.  Mot. at 5-6.

Plaintiff filed his initial Petition for Judicial Review before this Court in October 2011.  See First Petition (dkt. 1).  The operative Petition is his Second Amended Petition, filed that same month.  See generally Petition.  The Petition asks the Court to (1) judicially review the denial of his Application for Naturalization, and (2) enjoin his removal proceedings.  See generally id.  Defendants move to dismiss under Rules 12(b)(6) and 12(b)(1).  See generally Mot.

//

//

## II.     LEGAL STANDARD

Pursuant to Rule 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which  relief can be granted against that defendant.  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Id.  A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "[p]lausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Cahill v. Liberty Mut. Ins. Co ., 80 F.3d 336, 337-38 (9th Cir. 1996).  The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action.  Iqbal, 129 S. Ct. at 1951.

Motions to dismiss under Rule 12(b)(1) raise the question of the federal court's subject matter jurisdiction.  The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction.  See Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000).

## III.     DISCUSSION

Defendants move to dismiss the Petition on two grounds.  First, they argue that Plaintiff fails to state a claim under Rule 12(b)(6) because there are removal proceedings pending against Plaintiff.  See Mot. at 8-12.  Second, they argue that the Court lacks jurisdiction under Rule 12(b)(1) to enjoin Plaintiff's removal proceedings.  See id. at 12-13.  As the jurisdictional issue is the more straightforward of the two, this Order addresses it first.

**A.      No Jurisdiction over Removal Proceedings**

Defendants' argument that the Court lacks jurisdiction to enjoin the removal proceedings against Plaintiff, <u>see id.</u>, is correct.  "No court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).

The Supreme Court explained in <u>Reno v. American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471, 482-87 (1999), that section 1252(g) is to be interpreted narrowly:

> [t]he provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." . . . There are of course many other decisions or actions that may be part of the deportation process – such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.  It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

While a challenge to the Attorney General's decision to commence proceedings against someone "falls squarely within § 1252(g)," courts have jurisdiction over other types of deportation-related actions.  <u>Id.</u> at 487.  The Ninth Circuit has thus "affirmed grants of injunctive relief to classes of aliens challenging deportation procedures."  <u>See</u> <u>Catholic Soc. Servs., Inc. v. I.N.S.</u>, 232 F.3d 1139, 1150 (9th Cir. 2000).  It has further allowed that a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority."  <u>See</u> <u>U.S. v. Hovsepian</u>, 359 F.3d 1144, 1155 (9th Cir. 2004); <u>see also</u> <u>Franco-Gonzales v. Holder</u>, 767 F. Supp. 2d 1034, 1049 (C.D. Cal. 2010) ("the Ninth Circuit has distinguished between actions to obtain judicial review of the merits of INS proceedings and actions to enforce constitutional rights to due process in the context of those proceedings.").

Nonetheless, Plaintiff's challenge here falls squarely within section 1252(g), as Plaintiff asks the Court to enjoin DHS's commencement and adjudication of his removal proceedings.  <u>See</u> Petition ¶ 63 Request for Relief no. 4 ("For a temporary restraining order, a

**United States District Court**
For the Northern District of California

1  preliminary injunction, and a permanent injunction, all enjoining Defendants from continuing

2  with the in [sic] removal proceedings; removing [Plaintiff] from the United States or denying

3  [Plaintiff] entry into the United States during the pendency of this petition"); <u>see</u>

4  <u>also</u> <u>Jimenez-Angeles v. Ashcroft</u>, 291 F.3d 594, 599 (9th Cir. 2002) (no jurisdiction over

5  conduct of removal proceedings).

6      Plaintiff does not even argue to the contrary.  Rather than contend that his case falls

7  into one of the "many other decisions or actions that may be part of the deportation process"

8  that are not addressed by 1252(g), <u>see</u> <u>American-Arab Anti-Discrimination Committee</u>, 525

9  U.S. at 482, he argues that courts may grant injunctive relief under the All Writs Act or under

10 5 U.S.C. § 705.  <u>See</u> Opp'n (dkt. 26) at 8-9.  This is irrelevant: the question is not whether

11 the Court has the power to enjoin agencies generally, but whether it has the <u>jurisdiction</u> to do

12 so here.  Through section 1252(g), Congress has declared that it does not.  Accordingly,

13 Plaintiff's request that the Court enjoin the removal proceedings against him is dismissed for

14 lack of jurisdiction under Rule 12(b)(1).

15      **B.      Failure to State a Claim as to Naturalization**

16      Defendants' other argument, that Plaintiff fails to state a claim as to naturalization

17 because removal proceedings are pending against him, <u>see</u> Mot. at 8-12, is also correct,

18 although it is more complicated.  Defendants' argument is based on 8 U.S.C. § 1429, which

19 provides that "no application for naturalization shall be considered by the Attorney General if

20 there is pending against the applicant a removal proceeding pursuant to a warrant of arrest

21 issued under the provisions of this chapter or any other Act. . . ."  The Ninth Circuit has

22 explained that "[t]he natural reading of [section 1429] is that removal proceedings and final

23 removal orders are to take precedence over naturalization applications."  <u>See</u> <u>Perdomo-</u>

24 <u>Padilla v. Ashcroft</u>, 333 F.3d 964, 970 (9th Cir. 2003); <u>see also</u> <u>Kestelboym v. Chertoff</u>, 538

25 F. Supp. 2d 813, 816 (D. N.J. 2008) (section 1429 was designed to prevent "a race between

26 the alien to gain citizenship and the Attorney General to deport him.") (internal quotation

27 marks and citation omitted).

28

United States District Court
For the Northern District of California

Defendants assert that, although "the Ninth Circuit has concluded that the institution of removal proceedings does not divest a district court of its <u>jurisdiction</u> to review a denial of an application for naturalization, it has nonetheless held that pending removal proceedings <u>preclude a district court from granting effective relief</u> under section 1421(c)."  Mot. at 9 (citing <u>Bellajaro v. Schiltgen</u>, 378 F.3d 1042, 1045-47(9th Cir. 2004)) (emphasis added).  But <u>Bellajaro</u> does not go quite that far.

### 1.  **Bellajaro**

In <u>Bellajaro</u>, 378 F.3d at 1043-44, the Ninth Circuit found that section 1421(c) gave the district court jurisdiction to review any denial of an application for naturalization, but concluded that "the scope of that review is limited to the ground for the denial."  There, the INS had denied the plaintiff's naturalization application on the ground that section 1429 precluded the application from being considered while removal proceedings were pending. <u>Id.</u> at 1043.  The Ninth Circuit found that "[t]hat determination was unquestionably correct," and so there was nothing else for the district court to review, and dismissal was appropriate. <u>Id.</u>  The Ninth Circuit in <u>Bellajaro</u> did not explicitly address the issue of effective relief. However, it did reject the plaintiff's argument that, even if the court could not determine that he was entitled to naturalization, it could declare that he was eligible for naturalization but for the removal proceedings (in order to buttress his request that the agency terminate removal proceedings); this would be a "purely advisory" opinion. <u>Id.</u> at 1047.

Here, in contrast to <u>Bellajaro</u>, USCIS denied Plaintiff's application for naturalization not because removal proceedings had begun, but on the ground that he was not lawfully admitted to the United States by virtue of his alleged sham marriage.  Mot. at 5.  The removal proceedings came later.[1]  <u>See</u> Petition ¶ 61.  Under <u>Bellajaro</u>, 378 F.3d at 1047, it is clear that this Court has "jurisdiction pursuant to [section] 1421(c) to review [USCIS's] denial of [Plaintiff's] application for naturalization whether or not a removal proceeding is pending,

---

[1] Section 1429 applies even though the removal proceedings followed the denial of the naturalization application. <u>See</u> <u>Fayard v. Napolitano</u>, No. 10-1109, 2011 WL 1541294, at *2 (S.D. Cal. April 22, 2011) ("the statute at issues does not specify any timing restriction and simply refers to pending removal proceedings").

but that review is limited to 'such' denial." Plaintiff argues, then, that the Court has jurisdiction to review whether Plaintiff committed marriage fraud; he asserts that "[t]his Court can grant effective relief and discharge its jurisdiction even if only by making 'its own findings of fact and conclusions of law' on the issue of whether Plaintiff contracted his marriage to Ms. Davis solely for immigration benefit," or it can "order the Attorney-General to naturalize" him. Opp'n at 6. The Court agrees with Defendants that the Court cannot grant such relief.

### 2.    Other Cases

Plaintiff concedes that "some district courts have 'declined' jurisdiction if there is a removal proceeding[] pending on the grounds that it cannot grant effective relief." Opp'n at 5. Although not accurately characterized as a declination of jurisdiction, the majority of courts in these circumstances do hold that they have jurisdiction per Bellajaro, but nonetheless dismiss petitions for review because they cannot grant effective relief. See, e.g., U.S. CITIZENSHIP & NATURALIZATION HANDBOOK § 8:30 (2009) ("the majority of courts have concluded that they have subject matter jurisdiction over the naturalization matter, but that the pending removal proceedings precludes an effective remedy, because of 8 U.S.C. § 1429.").

Thus, Judge Fogel held in Chen v. Holder, No. 10-00291, 2010 WL 2836761, at *1 (N.D. Cal. July 19, 2010), that, where a plaintiff filed a petition for review of the denial of her naturalization application, and then USCIS initiated removal proceedings, the Court "cannot grant effective relief," and dismissed the case. Similarly, Judge White held in Aye Aye Kyi v. Chertoff, No. 08-03383, 2008 WL 5131619, at *2-4 (N.D. Cal. Dec. 5, 2008), that, where the INS denied an application for naturalization because the plaintiff had been granted lawful permanent resident status in error, and subsequently initiated removal proceedings, "the Court could not grant Plaintiff effective relief, because it could not order the Attorney General to do something precluded by statute." The court concluded that it did "not have the authority to issue an order directing the [INS] to adjust her status." Id. at *4. Similarly, Judge Benitez in Fayard, 2011 WL 1541294, at *2, granted USCIS's motion to

United States District Court
For the Northern District of California

dismiss a petition for review where the plaintiff's naturalization application was denied on the merits, and then removal proceedings began.  The court held that, although <u>Bellajaro</u> did not address what remedies are available if a court finds that citizenship should be granted, other courts had found that section "1421 prohibits all but the Attorney General from granting citizenship and the judiciary cannot order the Attorney General to do something that is barred by statute."  <u>Id.</u> (collecting cases); <u>see also</u> <u>Todorovic v. Pierre</u>, No. 10-1538, 2010 WL 5313484 (S.D. Cal. Dec. 20, 2010) ("the Court is powerless to grant Petitioner effective relief because USCIS has placed him in removal proceedings.  Under § 1421(a), the Court cannot naturalize Petitioner on its own authority or order the Attorney General to naturalize Petitioner without further review.  And under § 1429, the Court cannot order the Attorney General to reconsider Petitioner's application because § 1429 precludes the Attorney General from considering Petitioner's application while removal proceedings are pending.").

A minority of cases have concluded that they are not restrained from ordering the Attorney General to naturalize someone.  <u>See</u> Opp'n at 7.  Thus, in <u>Gonzalez v. Napolitano</u>, 684 F. Supp. 2d 555, 563 (D. N.J. 2010), the court found that, notwithstanding section 1421(a)[2], "a district court may naturalize a person under section 1421(c)[3]'s grant of jurisdiction."  The court concluded that, even if that is not correct, a district court can order the Attorney General to naturalize an applicant notwithstanding removal proceedings because such an order does not require the Attorney General to "consider" the petitioner's application, which is forbidden by section 1429.  <u>Id.</u>

Judge Patel rejected this same reasoning in <u>Castaneda v. Holder</u>, No. 09-2177, 2009 WL 4282810, at *2 (N.D. Cal. Nov. 25, 2009) ("Petitioner reasons that the court, should it find in her favor, could simply order the Attorney General to naturalize her without further review.").  There, like here, USCIS denied the plaintiff's naturalization application based on

---

[2] That section provides that the "sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."

[3] That section provides that "[a] person whose application for naturalization . . . is denied . . . may seek review of such denial before the United States district court. . . ."

United States District Court
For the Northern District of California

an alleged sham marriage. Id. at *1. Immediately thereafter, the plaintiff was ordered to appear for removal proceedings. Id. Judge Patel reasoned persuasively that

> [i]n light of Bellajaro and the unambiguous and exclusive grant of naturalization authority to the Attorney General by section 1421(a), this court concludes that it can neither naturalize petitioner on its own authority nor usurp the authority committed by Congress to the Attorney General to naturalize an alien without further review. Nor can the court order the Attorney General to review the application further, as section 1429 expressly prohibits consideration of the application before removal proceedings are concluded. Accordingly, the court cannot provide effective relief.

Id. at *3.

In reaching that conclusion, Judge Patel added that she was following the Sixth Circuit's holding in Zayed v. United States, 368 F.3d 902 (6th Cir. 2004). Id. Zayed, 368 F.3d at 906, held that, where the plaintiff's application for naturalization was denied on grounds other than that removal proceedings were pending, "the restraints that [section] 1429 imposes upon the Attorney General prevent a district court from granting effective relief under [section] 1421(c) so long as removal proceedings are pending." The court went on to explain that, because "[t]he exclusive power to naturalize aliens rests with the Attorney General, . . . and [section] 1429 bars the use of that power while removal proceedings are pending. . . . the district court could not properly have ordered the Attorney General to grant [the plaintiff's] application." Id. As Judge Patel noted, the Ninth Circuit cited Zayed approvingly in Bellajaro, 378 F.3d at 1046.[4] Castaneda, 2009 WL 4282810, at *3. This Court agrees with Castaneda and with Zayed.

### 3.    Conclusion as to Naturalization

Therefore, although the Ninth Circuit has not reached the precise issue of whether a district court can grant effective relief when an application for naturalization has been denied on the merits and then removal proceedings began, there is reason to believe that it would have answered that question in the negative. Certainly, every district court in the Ninth Circuit to have reached this issue seems to have done so. The Court further finds that

---

[4] "Others, including the Sixth Circuit in its recent opinion in Zayed [], interpret [section] 1429 as limiting the scope of review and the relief available, but not as stripping district courts of jurisdiction solely because removal proceedings are pending. We are convinced that this view is correct."

**United States District Court**
For the Northern District of California

1  <u>Bellajaro</u> specifically prevents it making findings of fact and conclusions of law about

2  whether Plaintiff's marriage is a sham.  <u>See</u> 378 F.3d at 1047 (finding that plaintiff was

3  eligible for naturalization but for the removal proceedings would be a "purely advisory"

4  opinion).  Accordingly, because the Court can neither order USCIS to naturalize Plaintiff,

5  nor make the requested findings and conclusions, the Court will dismiss Plaintiff's request

6  that the Court review the denial of his application for naturalization under Rule 12(b)(6).

7  **IV.     CONCLUSION**

8          For the foregoing reasons, the Court GRANTS the Motion on both grounds.

9          **IT IS SO ORDERED.**

10

11  Dated: February 17, 2012                          CHARLES  R. BREYER
                                                        UNITED STATES DISTRICT JUDGE

12